UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:24-cv-23695-BLOOM/ELFENBEIN

MARIA ISABEL RODRIGUEZ PALACIO,

    Plaintiff,

v.

NCL (BAHAMAS) LTD. a Bermuda Company
d/b/a NORWEGIAN CRUISE LINE,

    Defendant.
_____/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL[1]**

Plaintiff, MARIA ISABEL RODRIGUEZ PALACIO, sues Defendant, NCL (BAHAMAS) LTD. a Bermuda Company d/b/a NORWEGIAN CRUISE LINE, and states, as follows:

1. This is an action in excess of $75,000, exclusive of costs and attorney's fees.

**The Parties, Jurisdiction, and Venue**

2. Plaintiff, MARIA ISABEL RODRIGUEZ PALACIO ("Plaintiff"), is a citizen of Columbia.

3. Defendant, NCL (BAHAMAS) LTD. a Bermuda Company d/b/a NORWEGIAN CRUISE LINE ("Defendant"), is a foreign corporation with its principal place of business and corporate headquarters in Miami, Florida. Accordingly, Defendant is a citizen of Florida for purposes of establishing diversity jurisdiction in this lawsuit.

---

[1] Plaintiff filed suit in Florida state court. Defendant subsequently removed this action to this Court on September 25, 2024 (D.E. 1), and served a Motion to Compel Arbitration and to Stay on October 2, 2024 (D.E. 5). Plaintiff now files this Amended Complaint, as a matter of right, pursuant to Fed. R. Civ. P. 15(a)(1)(B).

1

4. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332(a) and is between a citizen of a State and a citizen or subject of a foreign country.

5. In the event that the Court finds that this case does not come under diversity of citizenship jurisdiction, then Plaintiff elects to proceed under the admiralty jurisdiction of the Court pursuant to 28 U.S.C. § 1333.

6. Defendant, at all times material hereto, personally or through an agent:

   a. Operated, conducted, engaged in, or carried on a business venture in Miami-Dade County, Florida, or had an office or agency in Miami-Dade County, Florida;

   b. Was engaged in substantial activity within Florida;

   c. Operated vessels in the waters of Florida;

   d. Committed one or more of the acts stated in Florida Statutes, Section 48.081, 48.181 or 48.193;

   e. The acts of Defendant set out in this Complaint occurred in whole or in part in this Miami-Dade County, Florida.

7. Defendant is subject to the jurisdiction of this Court.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

### General background

9. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel *Norwegian Getaway*. This vessel was registered in a flag-of-convenience country.

10. On or about July 29, 2022, Plaintiff was a member of the vessel's crew, while the vessel was operating in navigable waters.

11. While working as a crew member on the vessel *Norwegian Getaway*, Plaintiff was subject to the command of Defendant's captain and the ship's officers.

12. Prior to joining the *Norwegian Getaway*, Plaintiff underwent a pre-employment physical evaluation, which included lab work, urinalysis, electrocardiogram, audiometry, and visometry. On April 4, 2022, Plaintiff was declared medically fit for sea service.

13. Plaintiff joined Defendant's cruise vessel *Norwegian Getaway* on or about April 10, 2022 in New York City, in good health.

14. At all times material hereto, Plaintiff observed Defendant's crew members handling food without masks and coughing near food that was uncovered.

15. While working aboard Defendant's ship, Plaintiff repeatedly visited the ship's medical facility to seek treatment for symptoms that arose during her service aboard the vessel.

**Defendant is vicariously liable for the acts of its ship's doctors and medical staff aboard the *Norwegian Getaway*, who are Defendant's employees or actual agents**

16. Defendant is vicariously liable and responsible for the negligent acts of the ship's doctors and medical personnel aboard the *Norwegian Getaway* to the extent those persons were Defendant's employees and/or actual agents.

17. Defendant employed the ship's doctors and medical personnel aboard the *Norwegian Getaway* to provide medical and emergency medical treatment to its crew and passengers. At all times material to this action, the ship's doctors and the medical personnel were acting within the course and scope of their employment with Defendant by rendering medical treatment to Plaintiff.

18. Defendant, as principal, acknowledged that the ship's doctors and medical personnel aboard the *Norwegian Getaway* would act for its benefit and on its behalf. The ship's doctors and medical personnel aboard the *Norwegian Getaway*, as agents, manifested their

3

acceptance of that undertaking. Defendant's acknowledgement and the agents' acceptance are evidenced by, *inter alia*:

   a. Defendant provided the ship's doctors and medical personnel aboard the *Norwegian Getaway* with uniforms bearing Defendant's name and logo;

   b. Defendant directly paid the ship's doctors and medical personnel aboard the *Norwegian Getaway* for their work in the ship's medical center.

19. Defendant exercised control over the actions of the ship's doctors and medical personnel aboard the *Norwegian Getaway*. That control is evidenced by, inter alia:

   a. The ship's doctors and medical personnel aboard the *Norwegian Getaway* were Defendant's employees;

   b. Defendant hired the ship's doctors and medical personnel aboard the *Norwegian Getaway* to work in a medical facility that was owned and operated by Defendant;

   c. The ship's doctors and medical personnel aboard the *Norwegian Getaway* were considered by Defendant to be "seafarers," "crewmembers," and/or "employees";

   d. The ship's doctors and medical personnel aboard the *Norwegian Getaway* were required to wear uniforms furnished by Defendant;

   e. Defendant dictates the hours of operation for its shipboard medical centers;

   f. Defendant requires its ship's doctors and medical personnel aboard the *Norwegian Getaway* to be on-call 24 hours a day during cruises;

   g. Defendant paid the salaries of the ship's doctors and medical personnel aboard the *Norwegian Getaway*;

   h. Defendant controlled the pricing of services provided to crewmembers and passengers in the shipboard medical center on the *Norwegian Getaway*;

   i. Crewmembers and passengers treated by the ship's doctors and medical personnel aboard the *Norwegian Getaway* were billed directly by Defendant and not by the doctors or shipboard medical personnel;

   j. Defendant pays to stock the medical centers with all supplies, medications, and equipment necessary for the ship's doctors and medical personnel aboard the *Norwegian Getaway* to treat crewmembers and passengers in the ship's medical center;

   k. Defendant maintained the right to fire the ship's doctors and medical personnel

aboard the *Norwegian Getaway*.

20. Accordingly, the ship's doctors and medical personnel aboard the *Norwegian Getaway* were Defendant's actual agents. *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1236-1237 (11th Cir. 2014).

**Defendant is vicariously liable for the acts of its ship's doctors and medical staff aboard the *Norwegian Getaway*, who are Defendant's apparent agents**

21. Defendant is vicariously liable and responsible for the negligent acts of the ship's doctors and medical personnel aboard the *Norwegian Getaway* to the extent that those persons were Defendant's apparent agents.

22. Defendant provided the ship's doctors and medical personnel aboard the *Norwegian Getaway* with uniforms bearing Defendant's name and logo.

23. Based on that representation, Plaintiff reasonably believed that the ship's doctors and medical personnel aboard the *Norwegian Getaway* were authorized to render medical services for Defendant's benefit.

24. Defendant's representations induced Plaintiff to detrimentally and justifiably rely upon the appearance of an agency relationship between Defendant, as principal, and the ship's doctors and medical personnel aboard the *Norwegian Getaway*, as agents. That detrimental, justifiable reliance is evidenced by, *inter alia*:

   a. Plaintiff followed the advice of the ship's doctors and medical personnel aboard the *Norwegian Getaway* by not requesting that she be immediately evacuated off the ship for specialized treatment on April 22, 2022;

   b. Plaintiff followed the advice of the ship's doctors and medical personnel aboard the *Norwegian Getaway* by not requesting that she be immediately evacuated off the ship for specialized treatment on July 30, 2022;

   c. Plaintiff followed the advice of the ship's doctors and medical personnel aboard the *Norwegian Getaway* by not requesting that she be immediately evacuated off the ship for specialized treatment on August 7, 2022;

   d. Plaintiff followed the advice of the ship's doctors and medical personnel

5

  aboard the *Norwegian Getaway* by not requesting that she be immediately evacuated off the ship for specialized treatment on December 18, 2022;

 e. Plaintiff would not have blindly trusted the advice of unknown medical personnel if the ship's doctors and medical personnel aboard the *Norwegian Getaway* had not borne the imprimatur of a well-known and trusted cruise line, Defendant NCL;

 f. Plaintiff would not have followed the advice of the ship's doctors and medical personnel aboard the *Norwegian Getaway* had she suspected that they were not actually Defendant's agents

25. Accordingly, the ship's doctors and medical personnel aboard the *Norwegian Getaway* were Defendant's apparent agents. *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1251-53 (11th Cir. 2014).

### Defendant is liable for Plaintiff's injuries caused or aggravated by negligent treatment rendered by Defendant's employees/agents aboard Defendant's ship

26. The ship's doctors and medical personnel aboard the *Norwegian Getaway* failed to properly and timely diagnose and treat the illness that Plaintiff developed while serving as a crewmember aboard Defendant's ship.

27. As a result of Defendant's failure to timely and properly diagnose and treat Plaintiff's illness, her medical condition deteriorated.

28. While on board Defendant's ship, on or about April 22, 2022, Plaintiff developed symptoms that included stomach problems, diarrhea, and fatigue/tiredness. Plaintiff promptly sought medical treatment from the ship's medical facility.

29. Plaintiff was evaluated by Defendant's medical personnel, including Zdenko Bicanic, RN; Senior Doctor Christakia Georgiou; and an infectious disease prevention officer. The ship's medical doctor diagnosed her with acute gastroenteritis, provided her medications, and placed her in isolation.

30. While the stomach problems and diarrhea resolved, the fatigue and tiredness continued.

31. While still on board Defendant's ship, on or about July 29, 2022, Plaintiff developed additional symptoms that included a sore throat, headaches, pain in her extremities, red eyes, cool body, loss of appetite, swollen glands in her right armpit and popliteal area of her left leg (behind the knee), as well as the ongoing fatigue.

32. The following day, on or about July 30, 2022, Plaintiff again sought treatment from the ship's medical facility. Plaintiff was evaluated by Defendant's medical personnel, including Zdenko Bicanic, RN; Senior doctor Christakia Georgiou; Shelly Ann Dela Cruz, RN; and medical assistant Jacob Malobago. The ship's medical doctor diagnosed Plaintiff with acute pharyngitis, provided her medications, and placed her in isolation.

33. Plaintiff was in isolation from on or about July 30, 2022 through August 3, 2022. During the isolation Defendant's medical personnel Shelly Ann Dela Cruz, RN and medical assistant Jacob Malobago checked on her. Defendant's senior ship doctor Christakis Georgiou released her from isolation on August 3, 2022.

34. Following her release from isolation, Plaintiff continued to have symptoms and sought additional medical care at Defendant's ship medical facility on or about August 6, 2022. Initially, Plaintiff called the ship's medical secretary requesting medical care and a copy of her own medical records. Defendant's medical secretary directed Plaintiff to come to the medical facility to discuss the matter with the senior doctor.

35. At the direction of Defendant's medical personnel, Plaintiff lodged a written request for a copy of her own medical records. Defendant's medical personnel denied Plaintiff's request and refused to provide Plaintiff with a copy of her own medical records.

36. On or about August 7, 2022, Defendant's medical personnel turned her away from the ship's medical facility and directed her to return to her cabin to call them for the COVID protocol. Per the ship's COVID protocol, crewmembers were directed to call the medical facility,

7

after which someone would come to the crewmember's cabin for a COVID check prior to them be allowed in the medical facility.

37. Plaintiff returned to her cabin and called the medical, as directed. Defendant's medical personnel came and took her temperature, which was normal. Plaintiff asked to see the ship's doctor and explained that she was supposed to report for duty at 2 p.m. The medical personnel advised they would arrange for her to be seen prior to that time so that she could report for duty on time.

38. However, Defendant's medical personnel did not timely call her to come to the medical facility for treatment as requested. In the meantime, Plaintiff's manager called her to report for duty. So, Plaintiff went to work with the ongoing symptoms.

39. On that same date, August 7, 2022, Plaintiff's manager informed her she could go to the ship's medical facility at 6 p.m. The senior doctor told her that the "Indian doctor" was going to evaluate her, but that Plaintiff could not have a copy of her medical records until the end of her employment contract (January, 2023). Plaintiff waited until about 8 p.m. to be evaluated by the Indian doctor, who provided her medication for her ongoing cough/irritated throat. The doctor told her that she was not suffering from any serious condition and she had nothing to worry about.

40. While Plaintiff was working, a ship's security officer called Plaintiff's manager and said Plaintiff had violated the medical protocol by failing to observe the ship's COVID protocol and requesting her own medical records, and that she needed to report to the ship's security office. Plaintiff reported to the security office and completed a written statement.

41. Thereafter, Plaintiff continued to exhibit symptoms, but was discouraged from returning to the ship medical facility due to the way she was previously treated when attempting to receive medical care and information. Other crew members, including those in management,

warned Plaintiff against returning to ship medical too often.

42.     On or about December 18, 2022, Plaintiff sought medical treatment for her ongoing and additional symptoms, which included severe left wrist pain, continued physical exhaustion, fatigue, and bruising all over her body (face, arms, and legs).

43.     The ship's doctor, Valerie Mae Alviar, conducted an evaluation and tests. She diagnosed Plaintiff with anemia, thrombocytopenia, and left wrist pain. Dr. Alviar provided Plaintiff with medications and recommended a shoreside medical evaluation.

44.     On or about December 23, 2022, Plaintiff disembarked Defendant's ship for a shoreside medical evaluation and treatment at a hospital in New York City. Plaintiff was diagnosed with serious conditions that prevented her from traveling or working. She was prescribed steroid medications.

45.     Plaintiff was sent back to the cruise ship; however, Defendant initially refused to allow Plaintiff to re-board the ship. Plaintiff was placed in isolation in the cargo area for more than two hours while she awaited the captain's authorization to re-board the ship. Plaintiff was isolated in the ship's medical center and was not even allowed to collect her belongings from her cabin. Instead, her personal items were packed by her cabin mate.

46.     On or about December 26, 2022, Plaintiff disembarked Defendant's ship in Port Canaveral, Florida, where she was admitted to Cape Canaveral Hospital. Plaintiff was diagnosed with (1) Pancytopenia with severe thrombocytopenia (platelets 26K upon admission). Bone marrow biopsy hypocellular and no megakaryocytes; (2) mild anemia; (3) mild leukopenia; and (4) subclinical PNH/aplastic anemia.

47.     Cape Canaveral Hospital was not equipped to deal with Plaintiff's severe medical conditions so she was transferred to Advent Health in Orlando, Florida, on or about January 12, 2023, where she was diagnosed with severe aplastic anemia. Plaintiff remained hospitalized

there until February 6, 2023, when she was declared fit for travel.

48. Defendant refused to provide Plaintiff with the recommended medical treatment with her treating doctors in Florida.

49. Instead, Defendant required Plaintiff to return to her home country of Columbia for less expensive (cheaper) medical care.

50. The ship's doctors and medical personnel aboard the *Norwegian Getaway* failed to properly diagnose and treat Plaintiff.

51. Defendant selected and arranged Plaintiff's shoreside medical care providers, who failed to provide Plaintiff with prompt, proper, and adequate shoreside medical care.

52. Defendant's failure to provide Plaintiff with prompt, proper and adequate medical care while Plaintiff was serving aboard Defendant's ship resulted in a worsening of her condition and additional medical problems.

53. Specifically, Plaintiff was suffering initially from a bacterial and/or viral infection on the ship that was not properly diagnosed or treated. That bacterial and/or viral infection caused damage to her bone marrow and/or caused her severe thrombocytopenia, as well as anemia with leukopenia and/or aplastic anemia.

54. Aplastic anemia is a rare, but serious blood disorder that occurs when bone marrow cannot make enough new blood cells for the patient's body to function normally. Plaintiff has already received multiple blood transfusions and ultimately may require a bone marrow transplant to treat her condition.

### **Defendant also is liable for the subsequent negligent treatment rendered by medical providers in Colombia, which further aggravated Plaintiff's injuries**

55. Defendant selected and arranged Plaintiff's medical providers in New York, Florida, and Columbia.

56. The Columbian medical providers selected by Defendant to treat Plaintiff,

10

including but not limited to Oncology Center of Antioquia, were substandard.

57. The Oncology Center of Antioquia's staff and nurses did not follow basic hygiene practices, such as sanitizing their hands and/or wearing gloves before they touched Plaintiff.

58. The Oncology Center of Antioquia took an excessive amount of time to obtain the blood needed for Ms. Rodriguez's required blood transfusion, resulting in her extended hospitalization.

59. When the blood finally arrived, the medical personnel at Oncology Center of Antioquia failed to monitor Plaintiff or check her vitals during the transfusion.

60. The Oncology Center of Antioquia's medical staff was confused and unaware of Plaintiff's prescribed medication schedule. The staff would enter Plaintiff's room and ask her what medications she was taking and the frequency she needed. Either the doctors there failed to provide the medical staff with that critical information or the medical staff was too incompetent to follow the doctor's instructions.

61. The Oncology Center of Antioquia refused Plaintiff's requests for copies of her own medical records.

62. When the medical records were finally provided to Plaintiff, the Columbian medical provider selected by Defendant, Dr. Viviana Olaya Colorado, did not write accurate records. For example, Dr. Olaya left out many symptoms that Plaintiff had reported to her.

63. Dr. Olaya also pressured Plaintiff to proceed with a bone marrow transplant before allowing sufficient time for Plaintiff's medications to take effect, contrary to the recommendation of doctors Plaintiff had consulted with in the United States.

64. Plaintiff continues to suffer with aplastic anemia and other serious medical conditions.

65. The substandard medical care rendered by Colombian medical providers, who

11

were treating Plaintiff for the injuries previously inflicted/aggravated by Defendant and its employees/agents, resulted in a worsening of her condition and additional medical problems. Accordingly, Defendant is also liable for those additional injuries suffered by Plaintiff as a result of the substandard medical care rendered by Colombian medical providers.

## COUNT I
## UNSEAWORTHINESS

Plaintiff realleges, incorporates by reference, and adopts paragraphs one through 65 as though they were originally alleged herein and further alleges:

66. On or about the previously stated dates, Plaintiff was a seaman and a member of the crew of Defendant's vessel, the *Norwegian Getaway*, which was in navigable waters.

67. At all times material hereto, the vessel was owned, managed, operated and/or controlled by Defendant.

68. Defendant had the absolute nondelegable duty to provide Plaintiff with a seaworthy vessel that was reasonably safe and fit in hull, gear, appliances, ways, appurtenances, and staffing for its intended purpose.

69. On or about the previously stated dates, the unseaworthiness of Defendant's vessel was a legal cause of injury and damage to Plaintiff by reason of the following:

    a. The vessel was unsafe and unfit due to the conditions created by Defendant as follows:

        i. Crew members handling or working near food failed to wear masks and/or failed to properly cover their mouths/turn away from food when coughing; and/or

        ii. Defendant required Plaintiff to reside in a cabin with another crew member that did not wear a mask or appropriate cover coughs/sneezes; and/or

        iii. The vessel's medical center was not equipped with appropriate equipment and/or drugs to enable the prompt, proper and adequate diagnosis of Plaintiff's medical condition;

        iv. The vessel's medical center was not equipped with appropriate equipment

    and/or drugs to enable the prompt, proper and adequate treatment of Plaintiff's medical condition;

  b. The vessel's crew, specifically the ship's doctors and medical staff, was not properly trained, instructed, and/or supervised to enable them to:

    i. promptly, properly, and adequately diagnosis Plaintiff's medical condition; and/or

    ii. promptly, properly, and adequately treat Plaintiff's medical condition.

70. As a result of the unseaworthiness of the vessel, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature such that Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff has lost, in the past and in the future, fringe benefits that come with Plaintiff's job, including but not limited to free food, free shelter, free medical care, free uniforms, vacation, and free airline ticket home and back.

WHEREFORE, Plaintiff demands all damages entitled to by law, attorney's fees, pre-judgment and post-judgment interest, costs, and demands jury trial of all issues so triable.

## COUNT II
### NEGLIGENCE – VICARIOUS LIABILITY OF DEFENDANT
### (ACTUAL AGENCY / RESPONDEAT SUPERIOR)

Plaintiff realleges, incorporates by reference, and adopts paragraphs one through 65 as though they were originally alleged herein and further alleges:

71. This count seeks to hold Defendant vicariously liable, under principles of

respondeat superior and actual agency, for the negligence of the ship's doctors and medical personnel aboard the *Norwegian Getaway*.

72. At all times material to this action, Defendant, as well as its employees and/or actual agents, owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff with prompt, proper and adequate medical care for the medical condition that she developed while serving aboard Defendant's ship .

73. The ship's doctors and medical personnel aboard the *Norwegian Getaway* were the employees and/or actual agents of Defendant, as alleged in paragraphs 16 through 20 above.

74. The ship's doctors and medical personnel aboard the *Norwegian Getaway* breached their duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

   a. Failing to properly assess, diagnose, monitor and/or follow Plaintiff's bacterial and/or viral infection;

   b. Failing to provide adequate care, treatment, and/or follow up evaluations of Plaintiff's a bacterial and/or viral infection;

   c. Failing to immediately administer medications capable of preventing or minimizing the damage caused by Plaintiff's bacterial and/or viral infection;

   d. Failing to recognize and/or appreciate the gravity and time-sensitive nature of Plaintiff's bacterial and/or viral infection and its potential to develop into a more severe condition;

   e. Failing to arrange for Plaintiff to be promptly removed from the ship and taken to an appropriate shoreside medical facility capable of properly diagnosing and treating Plaintiff's bacterial and/or viral infection before it could develop into a more severe condition.

75. As a direct and proximate result of the negligence of the ship's doctors and medical personnel aboard the *Norwegian Getaway*, Plaintiff suffered severe and permanent injuries. Specifically, Plaintiff received improper and inadequate treatment for her bacterial

and/or viral infection for a period of several months between April and December 2022. As a result of the negligent treatment and significant delays, Plaintiff's condition continued to deteriorate and ultimately progressed to the point where the bacterial and/or viral infection caused damage to her bone marrow and/or caused her severe thrombocytopenia, as well as anemia with leukopenia and/or aplastic anemia.

76. As a further direct and proximate result of Defendant's negligence, Plaintiff received substandard medical care in Colombia, which further aggravated her medical condition, causing Plaintiff additional loss, injury, or damage.

77. As a direct and proximate result of Defendant's negligence, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature such that Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff has lost, in the past and in the future, fringe benefits that come with Plaintiff's job, including but not limited to free food, free shelter, free medical care, free uniforms, vacation, and free airline ticket home and back.

WHEREFORE, Plaintiff demands all damages entitled to by law, attorney's fees, pre-judgment and post-judgment interest, costs, and demands jury trial of all issues so triable.

## COUNT III
## NEGLIGENCE – VICARIOUS LIABILITY OF DEFENDANT
## (APPARENT AGENCY)

Plaintiff realleges, incorporates by reference, and adopts paragraphs one through 65 as though they were originally alleged herein and further alleges:

78. This count seeks to hold Defendant vicariously liable, under principles of apparent agency, for the negligence the ship's doctors and medical personnel aboard the *Norwegian Getaway*.

79. At all times material to this action, Defendant, as well as its apparent agents, owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff with prompt, proper and adequate medical care for the medical condition that she developed while serving aboard Defendant's ship.

80. The ship's doctors and medical personnel aboard the *Norwegian Getaway* were the apparent agents of Defendant, as alleged in paragraphs 21 through 25 above.

81. The ship's doctors and medical personnel aboard the *Norwegian Getaway* breached their duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

    a. Failing to properly assess, diagnose, monitor and/or follow Plaintiff's bacterial and/or viral infection;

    b. Failing to provide adequate care, treatment, and/or follow up evaluations of Plaintiff's a bacterial and/or viral infection;

    c. Failing to immediately administer medications capable of preventing or minimizing the damage caused by Plaintiff's bacterial and/or viral infection;

    d. Failing to recognize and/or appreciate the gravity and time-sensitive nature of Plaintiff's bacterial and/or viral infection and its potential to develop into a more severe condition;

    e. Failing to arrange for Plaintiff to be promptly removed from the ship and

taken to an appropriate shoreside medical facility capable of properly diagnosing and treating Plaintiff's bacterial and/or viral infection before it could develop into a more severe condition.

82. As a direct and proximate result of the negligence of the ship's doctors and medical personnel aboard the *Norwegian Getaway*, Plaintiff suffered severe and permanent injuries. Specifically, Plaintiff received improper and inadequate treatment for her bacterial and/or viral infection for a period of several months between April and December 2022. As a result of the negligent treatment and significant delays, Plaintiff's condition continued to deteriorate and ultimately progressed to the point where the bacterial and/or viral infection caused damage to her bone marrow and/or caused her severe thrombocytopenia, as well as anemia with leukopenia and/or aplastic anemia.

83. As a further direct and proximate result of Defendant's negligence, Plaintiff received substandard medical care in Colombia, which further aggravated her medical condition, causing Plaintiff additional loss, injury, or damage.

84. As a direct and proximate result of Defendant's negligence, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature such that Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff has lost, in the past and in the future, fringe benefits that come with Plaintiff's job, including but not limited to free food, free shelter, free medical care, free

uniforms, vacation, and free airline ticket home and back..

WHEREFORE, Plaintiff demands all damages entitled to by law, attorney's fees, prejudgment and post-judgment interest, costs and demands jury trial of all issues so triable.

### DEMAND FOR TRIAL BY JURY

Plaintiff, MARIA ISABEL RODRIGUEZ PALACIO, demands a trial by jury of all issues so triable as a matter of right.

>MEISTER LAW, LLC
>9300 S. Dadeland Blvd., Suite 101
>Miami, FL 33156
>Phone: (305) 590-5570
>Fax: (305) 675-3787
>Email: tonya@meisterlawfirm.com
>Email: maria@meisterlawfirm.com
>
>BY: /s/   Tonya J. Meister
>TONYA J. MEISTER
>Florida Bar No. 0629243
>
>   -and-
>
>ELIZABETH K. RUSSO
>Florida Bar No. 260657
>Email: ekr@russoappeals.com
>Email: yvonne@russoappeals.com
>PAULO R. LIMA
>Florida Bar. No. 0064364
>Email: prl@russoappeals.com
>RUSSO APPELLATE FIRM, P.A.
>7300 North Kendall Drive, Suite 600
>Miami, Florida 33156
>Tel: (305) 666-4660
>Fax: (305) 666-4470
>
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 16th day of October, 2024, I have filed a copy of the foregoing with the CM/ECF System, which will generate Notices of Electronic Filing to all parties that have appeared in this matter.

Curtis J. Mase, Esq.
cmase@maselaw.com
Garrett P. Keane, Esq.
gkeane@maselaw.com
MASE SEITZ BRIGGS, P.A.
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133

***Attorneys for Defendant***

         /s/ Tonya J. Meister