## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 24-cv-23695-BLOOM/Elfenbein

MARIA ISABEL RODRIGUEZ,

      Plaintiff,

v.

NCL (BAHAMAS) LTD. a Bermuda Company
d/b/a NORWEGIAN CRUISE LINE,

      Defendant.

_____/

### ORDER ON DEFENDANT'S SECOND MOTION TO COMPEL ARBITRATION AND TO STAY

     **THIS CAUSE** is before the Court upon Defendant NCL (Bahamas) Ltd. d/b/a Norwegian Cruise Line's ("Norwegian") Second Motion to Compel Arbitration and to Stay ("Motion"), ECF No. [20], to which Plaintiff Maria Isabel Rodriguez ("Plaintiff") filed a Response in Opposition, ECF No. [26], and Norwegian filed a Reply, ECF No. [27]. The Court has reviewed the Motion, the supporting and opposing submissions, the record in the case, and is otherwise fully advised. For the reasons that follow, Norwegian's Motion is denied.

### I. BACKGROUND

     This matter arose while Plaintiff was employed as a massage therapist onboard Norwegian's cruise ship, *Norwegian Getaway*. ECF No. [11] at ¶ 2. Although Plaintiff worked aboard Norwegian's ship, she was not employed by Norwegian; instead, Plaintiff had an employment agreement with OneSpaWorld to provide services aboard the *Norwegian Getaway*. ECF No. [1-1]. However, "[w]hile working aboard Norwegian's ship, Plaintiff repeatedly visited the ship's medical facility to seek treatment for symptoms that arose during her service aboard the

vessel. ECF No. [11] at ¶ 15. Norwegian "employed the ship's doctors and medical personnel aboard" the vessel whom Norwegian expected to provide "medical and emergency medical treatment to its crew and passengers." *Id.* at ¶ 17. According to Plaintiff, Norwegian's medical staff "failed to properly and timely diagnose and treat the illness that Plaintiff developed while serving as a crewmember," and as a result, "her medical condition deteriorated." *Id.* at ¶¶ 26-27.

Eventually, on December 23, 2022, Plaintiff disembarked the ship, and Defendant arranged for Plaintiff to receive "a shoreside medical evaluation and treatment at a hospital in New York City" where she "was diagnosed with serious conditions that prevented her from traveling or working." *Id.* at ¶ 44. However, Plaintiff ultimately returned to the ship, and just three days later, "disembarked on Defendant's ship in Port Canaveral, Florida. Once Defendant's ship arrived in Port Canaveral, Plaintiff was admitted to Cape Canaveral Hospital and diagnosed with: "(1) Pancytopenia with severe thrombocytopenia (platelets 26K upon admission)[;] [b]one marrow biopsy hypocellular and no megakaryocytes; (2) mild anemia; (3) mild leukopenia; and (4) subclinical PNH/aplastic anemia." *Id.* at ¶ 46. Plaintiff was then transferred to Advent Health in Orlando, Florida "where she was diagnosed with severe aplastic anemia." *Id.* at ¶ 47.

Once Plaintiff finally returned to Norwegian's ship on February 6, 2023, Norwegian purportedly "refused to provide Plaintiff with the recommended medical treatment" and "required Plaintiff to return to her home country of Columbia for less expensive (cheaper) medical care." ECF No. [11] at ¶ 48. However, the medical team in Columbia was purportedly "substandard," and consequently, Plaintiff's health worsened. *Id.* at ¶ 56.

Given Norwegian's failure to provide adequate medical care aboard its ship and its failure to send Plaintiff to capable shoreside medical providers, Plaintiff filed this action alleging the

following counts against Norwegian: (1) unseaworthiness; (2) vicarious liability based on actual agency; and (3) vicarious liability based on apparent agency. *See generally* ECF No. [11].

On October 30, 2024, Norwegian filed the instant Motion contending that this action may not proceed in federal court because Plaintiff's claims against Norwegian are subject to the arbitration clause provided in Plaintiff's employment agreement (the "Contract") with OneSpaWorld LLC ("OneSpaWorld"). ECF No. [20] at 1, 3. While Norwegian acknowledges that it was not a party to the Contract, Norwegian contends that it should be able to invoke the arbitration provision of the Contract because (1) Norwegian was an intended third-party beneficiary of the Contract; and (2) under agency and related principles, Norwegian is so closely affiliated with OneSpaWorld that Norwegian should be able to enforce the employment agreement as if it is OneSpaWorld. *Id.* at 3.[1]

Plaintiff argues that Norwegian cannot invoke the arbitration clause. ECF No. [26]. Not only did Plaintiff elect not to bring any claims against the only other signatory to the Contract, OneSpaWorld, the claims against Norwegian were not brought based on rights or duties provided in the Contract. *Id.* at 1. Moreover, even assuming the Contract was relevant to Plaintiff's claims against Norwegian, Norwegian was not a signatory to the Contract, nor is it affiliated with OneSpaWorld in any way. *Id.* Accordingly, Plaintiff contends there is no legitimate basis to conclude that Norwegian may enforce the arbitration provision of her Contract.

## II.   LEGAL STANDARD

### A.  Motion to Compel Arbitration

---

[1] While Norwegian's Motion originally asserted a third argument involving equitable estoppel, Norwegian has since withdrawn the estoppel argument in its Reply brief. *See* ECF No. [27] at 11-12.

When a court reviews a motion to compel arbitration, "a summary judgment-like standard is appropriate." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). A court "may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id.* "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "This court has consistently held that conclusory allegations without specific supporting facts have no probative value" for a party resisting summary judgment. *Bazemore*, 827 F.3d at 1333.

Still, "[t]he party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1324 (S.D. Fla. 2004); *see also Citi Cars, Inc. v. Cox Enterprises, Inc.*, No. 1:17-CV-22190-KMM, 2018 WL 1521770, at *4 (S.D. Fla. Jan. 22, 2018). "This burden is not unlike that of a party seeking summary judgment" because "the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and affidavits which support its contention." *Sims*, 336 F. Supp. 2d at 1324; *Bertram v. Beneficial Consumer Discount Co.*, 286 F. Supp. 2d 453, 456 (M.D. Pa. 2003) (finding that in the context of a motion to compel arbitration or to stay litigation pending arbitration, "the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party").

**B. The United Nations Convention on the Recognition and Enforcement of Foreign Arbitration Agreements**

When confronted with an arbitration agreement that involves foreign entities, courts turn to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") to determine if the arbitration agreement is enforceable. June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3. The Convention requires courts of signatory nations, such as the United States, to give effect to private arbitration agreements and to enforce arbitral awards made in signatory nations. Convention, art. I(1); *see also Sierra v. Cruise Ships Catering & Servs. Int'l, N.V.*, 631 F. App'x 714, 715-16 (11th Cir. 2015); *Suazo v. NCL, (Bahamas), Ltd.,* 822 F.3d 543, 546 (11th Cir. 2016) ("The purpose of the New York Convention, and of the United States' accession to the Convention, is to 'encourage the recognition and enforcement of international arbitral awards.'") (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2nd Cir 1983)). The United States enforces the Convention through Chapter 2 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 201-208.

Under both the FAA and the Convention, "'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate' it." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir. 2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). In other words, "the parties will not be required to arbitrate when they have not agreed to do so." *Id.* at 1214 (quoting *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419 (11th Cir. 1990)). Beyond that threshold consideration, "[i]n deciding a motion to compel arbitration under the Convention, a court conducts 'a very limited inquiry.'" *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (citations omitted). The primary focus of the inquiry is jurisdictional. "An arbitration agreement is governed by the New York Convention if the following four jurisdictional requirements are met:

(1) [T]he agreement is in writing within the meaning of the New York Convention;

(2) [T]he agreement provides for arbitration in the territory of a signatory of the New York Convention;

(3) [T]he agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and

(4) [O]ne of the parties to the agreement is not an American citizen."

*Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 20215) (quoting *Bautista*, 396 F.3d at 1294 n.7). If the agreement satisfies those jurisdictional prerequisites, the district court must order arbitration unless any of the Convention's affirmative defenses apply. *Bautista*, 396 F.3d at 1294-95 (citing *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 74 (1st Cir. 2000); *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 n.3 (11th Cir. 2004)). The Convention requires that courts enforce an agreement to arbitrate unless the agreement is "null and void, inoperative or incapable of being performed." Convention, art. II(3). "The limited scope of the Convention's null and void clause 'must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.'" *Id.* at 1302 (quoting *DiMercurio*, 202 F.3d at 80). Outside of these limited defenses, a jurisdictionally sound arbitration agreement must be enforced against parties who have agreed to arbitrate.

## III. DISCUSSION

The Employment Agreement ("Contract") Plaintiff entered into with OneSpaWorld contains an arbitration clause which states:

(a) This Agreement shall be governed by the laws of The Bahamas.

(b) Except as provided in the last two sentences of Section 16(b), any and all disputes, claims, or controversies whatsoever, whether in contract, regulatory, tort or otherwise, including but not limited to, constitutional, statutory, common law, intentional tort and equitable

claims, as well as Jones Act and Wage Act claims, claims for negligence, unseaworthiness, maintenance and Cure, failure to provide prompt, proper and adequate medical care, personal injury, death, or property damage and whether accruing prior to, during or after the expiration of this Agreement (collectively "Disputes"), shall be resolved by final and binding arbitration. In addition, Employee agrees to arbitrate any and all disputes regarding the existence, validity, termination or enforceability of any term or provision in this Agreement. All arbitration between the parties shall be referred to and finally administered and resolved in Nassau, The Bahamas and administered by the American Arbitration Association ("AAA") under its international dispute resolution procedures. The Company and Employee may initiate arbitration by the appropriate filing with the AAA. The number of arbitrators shall be one. The Arbitrator shall be a member of the bar of The Bahamas and mutually acceptable to Employee and the Company. If the Company and Employee cannot agree on an arbitrator, the AAA shall select the arbitrator pursuant to its applicable procedures, provided that the arbitrator so selected must be a resident of the Bahamas and a member of the Bar of the Bahamas. The language of the arbitral proceedings shall be English. Each Party shall bear its own attorney's fees and costs regardless of any laws to the contrary. At Company's request, Employee agrees to appear at Employee's expense for medical examinations by doctors designated by the Company in specialties relevant to any disputes between the Parties. If Employee is from the Philippines, all Disputes shall be governed by the terms of the Standard Philippine Overseas Employment Administration Contract of Employment ("POEA Contract") and the POEA Contract jurisdictional and venue terms shall supersede and take precedent over any conflicting terms set forth in this Agreement. If Employee is a United States citizen and the Company cannot mandate that a Dispute be subject to arbitration, Employee agrees that such Dispute shall be litigated, if at all, in the United States District Court for the Southern District of Florida, to the exclusion of the courts of any other state, territory or country or elsewhere in the State of Florida, including state court. Employee specifically waives any venue or other objection that Employee may have to any such action or proceeding being brought in the United States District Court of the Southern District of Florida.

ECF No. [1-1] at 14.

Norwegian contends that all of Plaintiff's claims are covered by the Contract's arbitration clause and that Norwegian has the authority to enforce the arbitration clause, notwithstanding Norwegian was not a party to the Contract. ECF No. [20] at 6. Norwegian points out three

requirements necessary to enforce a contract's arbitration clause: "(1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists within the scope of the arbitration clause; and (3) the movant has waived its right to arbitration." *Id.* at 7. Norwegian insists that elements two and three are not seriously in dispute, and that the only question to resolve is whether a written agreement containing an arbitration clause exists between the parties.[2] While Norwegian acknowledges the general rule that only signatories to a contract may enforce a contractual provision, Norwegian maintains that two generally recognized exceptions apply here.[3] *See id.* at 9.

### A.  Third Party Beneficiary Exception

Regarding the first exception, Norwegian argues it may enforce the Contract's arbitration provision because Norwegian "is an intended beneficiary of the Employment Agreement generally and the arbitration provision specifically." *Id.* at 10. Norwegian first notes that the Contract "repeatedly references Norwegian and the vessel that Plaintiff worked upon." *Id.* at 11. Norwegian asserts that throughout the Contract, it is referred to "as 'the Cruise Line,' as 'owner of the Vessel,' and as the Vessel operator." *Id.* Additionally, Norwegian points out that its ship—the *Norwegian Getaway*—is specifically "referenced by name in the addendum." *Id.* According to Norwegian, that specific reference, along with the more generalized references to the vessel, satisfy the "de facto threshold requirement" that any intended beneficiary be specifically referenced by name in the governing contract. *Id.* at 11-12.

---

[2] Although Norwegian's Motion explains why the second and third elements are satisfied, there is no need to discuss Norwegian's argument on these issues as Plaintiff does not dispute that those two elements have been satisfied.

[3] As explained above, Norwegian originally argued equitable estoppel was a third exception, however, Norwegian subsequently withdrew that argument in its Reply brief. *See* ECF No. [27] at 11-12.

Norwegian also argues that it is an intended beneficiary of the Contract given the substantial rights and responsibilities the contracting parties conferred upon the company. *See id.* at 12. Norwegian asserts that the Contract provided the Cruise Line the right to demand medical exams, drug testing, and determine whether an employee was a danger to the health and safety of other people aboard the ship. Norwegian also possessed the power "to demand that Plaintiff's employment [on the ship] be terminated," and ultimately bar Plaintiff from staying aboard the vessel. *Id.* Given these purportedly substantial rights Norwegian was able to assert pursuant to the Contract, Norwegian contends it is necessarily an intended third-party beneficiary. *Id.*

Norwegian argues the scope of the Contract's arbitration clause further suggests that Norwegian is an intended beneficiary. Norwegian points out that the arbitration clause itself specifically covers "shipowner-related claims, such as unseaworthiness and failure to properly treat." *Id.* According to Norwegian, the Contract's coverage of such claims demonstrates the signatories' intent to provide Norwegian with the benefits of arbitration because such claims can only be brought against a shipowner. ECF No. [20] at 11-13. Therefore, since the arbitration clause covered claims that would arguably exclusively involve a cruise ship owner's conduct, Norwegian argues the contracting parties contemplated that the Contract be, at least in part, for Norwegian's direct benefit. *Id.* at 13.

Furthermore, Norwegian contends that the arbitration clause, unlike other provisions of the Contract, "does not specify that it relates only to the 'Parties,' the 'Employee,' or the 'Company.' Instead, it states,' any and all disputes, claims, or controversies, whatsoever . . . shall be resolved by binding arbitration' without any limiting language as to who shall or can be involved in those disputes, claims or controversies." ECF No. [20] at 13 (quoting ECF No. 1-1 at ¶ 16(b)). Since the Contract is specific in other portions of the agreement but broad in defining the scope of arbitrable

issues, Norwegian argues the Court should construe the arbitration clause's generality as the contracting parties' intent to include Norwegian as an intended beneficiary of the Contract. *Id.*

Plaintiff agrees the only question in dispute is whether Norwegian, a non-signatory to the Contract, may enforce the Contract's arbitration provision. Plaintiff points out that "an arbitration clause 'is a contractual provision that cannot ordinarily be invoked by or against one who was not a party to the agreement in which the clause appears.'" ECF No. [26] (quoting *Usme v. CMI Leisure Mgmt., Inc.*, 10 F.4th 1079, 1087 (11th Cir. 2024)). Given this presumption, Plaintiff argues that Norwegian could theoretically only compel arbitration under a narrow and limited set of exceptions; none of which are applicable here.

Plaintiff first addresses Norwegian's argument that it may enforce the arbitration clause under the intended third-party beneficiary exception. Plaintiff contends, despite Norwegian's arguments to the contrary, "[t]he Employment Agreement is a 16-page contract that does not once identify Norwegian by name . . .. The only place the company's name appears is on a one-page 'Wage Addendum,' which is a form document that is filled in to identify the name of the ship on which [Plaintiff] would be serving during the term of her employment." *Id.* at 6. According to Plaintiff, this, alone, is insufficient to show that Norwegian was a specifically identified intended beneficiary to the Contract. Furthermore, Plaintiff maintains the Contract's generic references to "the Cruise Line," "the owner of the Vessel," and the "Vessel operator" do not constitute specific references, or even implied references, to Norwegian specifically. *Id.* at 6-7. Plaintiff points out that OneSpaWorld "operates spas, salon and fitness centers" on "twenty-one (21) different cruise lines and "bills itself as 'the world's no. 1 cruise line spa operator.'" *Id.* at 7. (quoting https://onespaworld.com/at-sea/spas-at-sea/ (last visited [by Plaintiff] on Nov. 13, 2024)).

Therefore, the references to the vessel or the owner of the vessel apply to no cruise ship or cruise ship operator in particular.

Furthermore, Plaintiff contends that even if Norwegian was specifically identified, there is still insufficient evidence that the "direct and primary object of the contracting parties was to confer a benefit on [Norwegian]." *Id.* at 7. (emphasis removed). According to Plaintiff, there is no specific or clearly expressed representation by the signatories that they intended to confer legally enforceable rights onto Norwegian. Rather, the primary purpose of the Contract was to benefit the signatories—the Plaintiff by way of payment, and OneSpaWorld by way of services rendered. *See id.* at 7-8.

Finally, Plaintiff addresses Norwegian's argument that the "broad scope of the arbitration agreement also shows that Norwegian was an intended beneficiary of it." ECF No. [26]. Plaintiff maintains that while the Contract's arbitration clause is "quite broad as to the scope or topics that can be arbitrated, it expressly limits who is entitled to avail themselves of those arbitration rights— namely, the 'Parties,' the 'Company' and the 'Employees.'" *Id.* at 10. Therefore, the arbitration clause does not undermine Plaintiff's argument but rather buttresses the argument that the signatories understood themselves to be the sole intended beneficiaries of the Contract.

As both parties have pointed out, one important exception to the general rule that only signatories to a contract may enforce the contract's provisions is the intended third-party beneficiary doctrine which "allows a non[-]signatory to compel arbitration when the parties to a contract agree upon formation to confer certain benefits upon a third party, 'affording that third party rights of action against them under the contract.'" *Liu v. Wu*, No. 23-21541-CV, 2024 WL 516960, at *5 (S.D. Fla. Jan. 5, 2024) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999)). However, this doctrine may only be invoked where there is "clear intent" that

"the direct and primary object of the contracting parties was to confer a benefit on the third party." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). "Where the contract is designed solely for the benefit of the formal parties thereto, a third person cannot maintain an action thereon, even though such third person might derive some incidental or consequential benefit from its enforcement." *Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 640 (11th Cir. 1990) (quoting *Florida ex rel. Westinghouse Elec. Supply Co. v. Wesley Constr. Co.*, 316 F. Supp. 490, 495 (S.D. Fla.1970)).

While the Court is to "constru[e] the terms of the contract as a whole" when determining whether a non-signatory is an intended third-party beneficiary, *Cox v. Anesthesia Business Consultants, LLC*, Case No. 3:20-cv-5731, 2020 WL 12279046, at *3 (N.D. Fla. Nov. 25, 2020), the Court must still find that the parties expressed a clear and specific intent to make the third party an intended beneficiary to the agreement. *See Arias v. Integon Nat'l Ins. Co.*, Case No. 18-22508-CIV, 2018 WL 4407624, at *3 (S.D. Fla. Sept. 17, 2018) ("For a contract to intend to benefit a third party, the intent must be specific and clearly expressed in the contract.") (citing *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1364 (S.D. Fla. 2016)). Therefore, "even though a third party is referenced in an agreement, the third party is merely an incidental beneficiary absent express evidence that the contracting parties intended to bestow a direct benefit on the third party."

Here, Norwegian fails to establish that the direct and primary objective of the Contract was to confer a benefit onto Norwegian. *See Cox*, 2020 WL 12279046, at *3 ("A third party is the intended beneficiary of a contract only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong."); *See Peters v. The Keyes Co.*, 402 F. App'x 448, 451 (11th Cir. 2010) (explaining defendant could not claim intended third party beneficiary status because

"[t]o qualify as a third-party beneficiary, the purchase agreement had to be executed 'for the primary benefit of' [the third party].") (*Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. Dist. Ct. App. 2004)); *Rosa v. Hotwire Comms. Ltd.*, Case No. 0:22-cv-60827, 2023 WL 2917210, at *2 (S.D. Fla. Jan. 18, 2023) (citing *Bauman v. Rayburn*, 878 So.2d 1273, 1274 (Fla. 5th DCA 2004) (finding that a property owner was merely an incidental third party beneficiary of a contract between a general contractor and subcontractor because neither the contract nor anything else in the record clearly expressed an intent to primarily benefit the owner)). Although there is a single passing reference to Norwegian in the wage addendum as well as implied references to Norwegian's vessel,[4] the primary focus and objective of the parties' Contract was to establish the rights and duties owed to the signatories by entering into an employment agreement with one another. As is made plain by the terms of the Contract, Plaintiff was to be compensated by OneSpaWorld, and Plaintiff was expected to perform its services for the benefit of OneSpaWorld, not Norwegian. *See* ECF No. [1-1] at 1, 8 ("The Company hereby employs Employee and Employee hereby accepts employment by the Company . . . Employee at all times shall be subject and directly responsible to the Company's manager of the Spa on the Vessel in question (the 'Manager'), who shall designate the hours during which Employee shall perform services, the specific duties to the be performed by Employee and other details of Employee's employment on the Vessel."). The fact that Norwegian may have benefited from Plaintiff's services does not mean that Norwegian became an *intended* third-party beneficiary. *Rosa*, 2023 WL 2917210 at *2.

---

[4] The general refences to the "'Cruise Line,' as 'owner of the Vessel,' and as the Vessel operator" do not manifest an intent to make Norwegian an intended beneficiary. Indeed, the Contract states that "[i]n this Agreement, the term 'Vessel' (when capitalized) refers to the vessel on which Employee is serving, or which Employee is proved to serve, as the case may be, at the time in question pursuant to this Agreement." ECF No. [1-1] at 1. Therefore, by its express terms, the Contract could be referring to a number of different vessels depending on when the contract was sought to be enforced. Accordingly, the Court cannot agree that those references manifest a clear and specific intent to confer rights or benefits directly to Norwegian.

("[T]he contracting parties' knowledge that the contract will ultimately benefit an identifiable third party is insufficient to transform the third party into an "intended" third-party beneficiary.").

Norwegian fails to point to any portion of the Contract suggesting that the signatories' primary purpose was to confer rights onto Norwegian. The fact that "Plaintiff agreed to indemnify OneSpaWorld's 'Affiliates'" is not helpful to Norwegian as it is not an "affiliate" of OneSpaWorld. ECF NO. [20] at 12. Regarding the contention that the Contract conferred the right to Norwegian "to demand medical examinations or drug testing" and had the power to demand Plaintiff's employment on the vessel be terminated, those rights were not central to the Contract. OneSpaWorld determined Plaintiff pay, hours, and duties, retained the authority to transfer Plaintiff to a different vessel should an issue arise, and also retained the ultimate authority to terminate Plaintiff from working on any vessel OneSpaWorld contracted to provide services for, not just the *Norwegian Getaway*. *See* ECF No. [1-1] at 7-9. As such, to the extent the Contract conferred limited and incidental rights upon Norwegian, those rights were not the primary object of the Contract, and thus, fails to establish Norwegian as an intended third party beneficiary.

Turning to the Contract's arbitration clause, the Court finds that it does not evidence that the parties contemplated that anyone other than the signatories could compel arbitration. Indeed, the arbitration clause notes that "All arbitration between **the parties** shall be referred to and finally administered and resolved in Nassau, The Bahamas…." Additionally, the clause states only "[t]**he Company** and **Employee** may initiate arbitration" and that the arbitrator must be "mutually acceptable to **Employee** and the **Company**." The clause also provides that "[i]f the **Company** and **Employee** cannot agree to an arbitrator, the AAA shall select the arbitrator . . .." ECF No. [1-1]. By only referring to the "parties," "the Company," and "the Employee," the arbitration provision expresses that the signatories did not contemplate that a third party had the authority to invoke the

arbitration clause given that the clause only provides for what would occur should either Plaintiff or OneSpaWorld intend to bring a claim falling within the scope of the clause.

While Norwegian argues that the inclusion of unseaworthiness claims and failure to treat claims in the arbitration clause indicate that the signatories intended to make Norwegian a third-party beneficiary, the Court is unpersuaded. Although it is true that "unseaworthiness claims [and failure to treat claims] always run directly against the shipowner and cannot be brought against non-shipowners," *Ward v. M/Y Utopia IV*, 674 F. Supp. 3d 1273, 1278 (S.D. Fla. 2023),[5] the inclusion of this type of claim in the arbitration clause does not necessarily mean that the parties extended the right to arbitre to any individuals or entities that would be liable for such claims. Indeed, it is possible that the parties were not aware that those claims may not be viable against non-shipowners, and therefore, Plaintiff might attempt to bring such a claim against OneSpaWorld in court. In an instance where unseaworthiness and failure to treat claims were brought against one of the signatories, the arguable meritless nature of the claim would simply be resolved through arbitration rather than judicial proceedings. In other words, the arbitration clause can be reasonably read as an attempt to resolve virtually all potential disputes between the signatories (regardless of merit) through the arbitration process rather than costly and burdensome judicial proceedings. Accordingly, the Court finds the arbitration clause neither provides nor imposes any clear and specific rights or obligations on anyone other than the signatories to the Contract. As such, Norwegian may not rely on the third-party beneficiary doctrine to enforce the arbitration clause of the Contract.

### B. Norwegian Lacks a Sufficiently Close Relationship to OneSpaWorld to Enforce the Arbitration Clause

---

[5] *See Demici v. Holland America Line N.V., LLC*, Case No. 20-61033-CIV, 2020 WL 13358612, at *3 (S.D. Fla. Oct. 20, 2020) ("Liability for unseaworthiness and failure to treat falls directly to the shipowner, not the employer.") (citing *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 185 (5th Cir. 1981)).

Alternatively, even if Norwegian is not an intended third party beneficiary of the Contract, Norwegian contends it may still enforce the arbitration clause because Norwegian and OneSpaWorld have a sufficiently close relationship. According to Norwegian, a non-signatory to a contract may still enforce the contract if the relationship between a signatory and a non-signatory "is sufficiently close that only by permitting the non[-]signatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." ECF No. [20] at 14 (quoting *MS. Dealer Serv. Corp. v. Franklin*, 117 F.3d 942, 947 (11th Cir. 1999)). Norwegian contends that it and OneSpaWorld have a "symbiotic relationship" given that "OneSpaWorld has operated amenities aboard Norwegian's cruise ships for decades." *Id.* Norwegian asserts that the relationship has now evolved such that they now run their respective businesses together on the ship. Norwegian's evidence of this symbiotic relationship includes the following:

1. "Norwegian agreed to supply crew quarters and food for OneSpaWorld employees"

2. "OneSpaWorld agreed that Norwegian can train One Spa World's employees in boat drills, among other nautical issues."

3. "Norwegian agreed to provide onboard medical care to OneSpaWorld's employees."

4. "OneSpaWorld agreed that their employees will 'give prompt obedience to the instructions and orders' provided by Norwegian's officers 'in regard to health, safety and discipline aboard the Vessels.'"

5. "OneSpaWorld agreed that 'its employees will meet such standards of competence, training and demeanor as [Norwegian] shall from time to time establish' while granting Norwegian the right to 'disapprove the employment' of OneSpaWorld personnel who do not meet those standards."

6.  "OneSpaWorld agreed to be the 'exclusive employer' for 'all obligations or liabilities'
    to OneSpaWorld's employees under general maritime law."

*Id.* at 15-16.

In light of this purportedly close relationship between the two entities, Norwegian contends
that it was reasonably foreseeable that "Plaintiff would be bound to the arbitration agreement in
litigation against Norwegian for claims of unseaworthiness and failure to properly treat." *Id.* at 16.
Accordingly, Norwegian argues that it must be able to enforce the arbitration provision against
Plaintiff to avoid eviscerating the intent of the Contract between the two contracting parties. *See
id.*

Plaintiff argues the close affiliation exception does not apply here "for the simple reason
that requiring Norwegian to litigate in this Court would not 'eviscerate' the arbitration provision
in the [Contract] between Plaintiff and OneSpaWorld." ECF No. [26] at 11. Plaintiff points out
that she is presently in arbitration with OneSpaWorld pursuant to the arbitration provision in her
Contract. Therefore, the right to arbitration has not been undermined, but instead, is being fully
and freely exercised by the signatories to the Contract. *See id.*

The Court agrees there is not a sufficiently close relationship between Norwegian and
OneSpaWorld such that enforcement of the arbitration clause as to Norwegian is necessary to
preserve the rights guaranteed by the Contract. Norwegian and OneSpaWorld are not the same
entity, operating a joint venture, nor are they even affiliated entities. As courts in this district have
explained, "[a]t the 'heart' of the definition of affiliate is 'a person who, or entity which owns or
exercises control over or is controlled by, directly or indirectly another person or entity." *Taylor
Group, Inc. v. Industrial Distributors Int'l. Co.*, 506 F. Supp. 3d 1256, 1272 (S.D. Fla. 2020)
(quoting *League of Women Voters of Fla. v. Browning*, 575 F. Supp. 2d 1298, 1317 (S.D. Fla.

2008)). As such, the relevant inquiry to determine whether an entity is an affiliate of another is a question of control.

Here, Norwegian makes no serious argument that Norwegian or OneSpaWorld exercises control over the other or that a common entity controls both companies. To show affiliation, Norwegian merely relies on the fact that it provided crew quarters and medical care to OneSpaWorld Employees, trained the employees on certain boat drills, and had the right to disapprove of certain OneSpaWorld employees aboard its ship. However, simply agreeing to work together and provide training and resources to one another is not sufficient evidence of control, but rather evidence of a normal symbiotic business relationship; particularly here, where one party is a steward of all the passengers on board.[6]

Moreover, district courts have found that a mere agency relationship between a signatory and a non-signatory is insufficient to allow the non-signatory to compel arbitration. *See Lieu v. Wu*, Case No. 23-21541, 2024 WL 516960, at *5 (S.D. Fla. Jan. 5, 2024) ("However, 'a non-signatory cannot compel arbitration merely because he is an agent of one of the signatories.'") (quoting *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 943 (Fla. 1st Dist. Ct. App. 2004)). "A non-signatory agent should be permitted to compel arbitration [only] 'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory . . . [or] when the signatory to the contract containing a[n] arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Koechli*, 870 So. 2d

---

[6] To the extent Norwegian argues that it exercises control over OneSpaWorld given its "right to 'disapprove the employment' of OneSpaWorld personnel," the Court is unpersuaded that demonstrates control. First, all that evidences is that Norwegian can keep certain employees from working on its ship, not that they have to right to terminate OneSpaWorld employees outright. Moreover, even if they could fire employees, that would merely demonstrate control over the employees and not OneSpaWorld.

at 943 (quoting *Westmoreland v. Sadoux*, 299 F.3d 462, 466 (5th Cir. 2002)). Plaintiff does not rely on the terms of the Contract to bring claims against Norwegian. Indeed, the Complaint does not even mention the Contract, let alone the rights contained therein. Additionally, the claims in the Complaint are not dependent on the conduct of OneSpaWorld.

Most importantly, however, neither OneSpaWorld nor Plaintiff's right to arbitration has been undermined by the fact that Plaintiff has brought her claims against Norwegian before this Court. Plaintiff and OneSpaWorld are presently arbitrating their claim and Norwegian has offered no evidence to suggest that OneSpaWorld's ability to arbitrate the claims will be impacted by the Court's resolution of this case. *See Lieu*, 2024 WL 516960, at *5 ("This Court does not eviscerate the underlying arbitration agreement between Plaintiff and [the other signatory] by not allowing the nonsignatory defendant to compel arbitration, as the Purchase Agreement's arbitration clause would still control between Plaintiff and [the other signatory]. Accordingly, Defendant cannot rely on the agency principles exception to compel arbitration in this case."). Therefore, Norwegian may not rely on the agency or related principles exception to compel arbitration here.

## IV.    CONCLUSION

Because Norwegian, as a non-signatory, has failed establish any exception that would allow it to enforce the arbitration agreement between Plaintiff and OneSpaWorld against Plaintiff, the case will proceed forward as scheduled.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Second Motion to Compel Arbitration and To Stay, **ECF No. [20]**, is **DENIED.**

2.   In light of the Court's instant Order, Defendant's Motion to Stay Discovery Pending its Motion to Compel Arbitration and to Stay, **ECF No. [28],** is **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 12, 2025.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record